IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAURIE ANN BASS, | ) | CIVIL NO. 09-00476 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANTS AMERIQUEST |
| | ) | MORTGAGE COMPANY AND |
| AMERIQUEST MORTGAGE | ) | AMC MORTGAGE SERVICES, |
| COMPANY; AMC MORTGAGE | ) | INC.'S MOTION FOR SUMMARY |
| SERVICES, INC.; and DOES 1-30, | ) | JUDGMENT, DOC. NO. 20 |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS AMERIQUEST MORTGAGE COMPANY AND AMC MORTGAGE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 20**

## I.  INTRODUCTION

Plaintiff Laurie Ann Bass ("Plaintiff") brings claims against

Defendants Ameriquest Mortgage Company ("Ameriquest") and AMC Mortgage

Services, Inc. ("AMC") (collectively, "Defendants") for violation of the Federal

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and state law claims

stemming from Defendants' alleged misconduct regarding mortgage loans Plaintiff

took out with Defendants on properties located at 711 Kakuahanoa Avenue, Hilo,

Hawaii 96720 (the "Hilo Property"), and 28-535 Kulaimano Road, Pepeekeo,

Hawaii 96783 (the "Pepeekeo Property") (collectively, the "Subject Properties").

Currently before the court is Defendants' Motion for Summary

Judgment, in which they argue that Plaintiff's TILA claim fails because Plaintiff is not entitled to rescission, and Plaintiff's state law claims are otherwise meritless. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

## II.  **BACKGROUND**

### A.    **Factual Background**

In June 2005, Plaintiff refinanced her mortgages on the Subject Properties with Ameriquest.  Specifically, Plaintiff obtained one loan for $350,000 secured by a mortgage on the Pepeekeo Property dated June 2, 2005 and recorded on June 14, 2005, *see* Defs.' Concise Statement of Facts ("CSF") ¶ 2,[1] and a second loan for $185,000 secured by a mortgage on the Hilo Property dated June 2, 2005 and recorded on June 17, 2005.  *Id.* ¶ 3.  Plaintiff asserts that at the time of closing for both these transactions, she "was provided with inaccurate and confusing good faith disclosures by Ameriquest and its representatives, who additionally without my knowledge falsified my gross monthly income" on the loan applications.[2]  Pl.'s Decl. ¶¶ 6, 9; *see also* Pl.'s Ex. B.  Plaintiff also asserts

---

[1]  Where Plaintiff does not dispute facts proffered by Defendants, the court cites directly to Defendants' CSF.

[2]  Defendants object to several of Plaintiff's specific assertions regarding Defendants' alleged misconduct on the basis that these assertions are not explicitly contained in the Complaint.  *See* Defs.' Reply 2.  Because the court does not read the Complaint as narrowly as Defendants, the court rejects this argument.  *See, e.g.*, Compl. ¶ 35 (alleging "material misdisclosures and nondisclosures" in violation of TILA), ¶ 37 (alleging "churning and wrongful nonjudicial foreclsoure and bait and switch tactics as to the interest rates and forged loan

that Ameriquest induced her to take both loans by promising her "cheaper loans than what I eventually received, changing the terms on me at closing, while promising me that I could refinance later with better rates." Pl.'s Decl. ¶ 10. As to the Pepeekeo loan transaction, Plaintiff further asserts that she did not receive at closing or at any time thereafter two completed copies of the Notice of Right To Cancel form, but instead received only three blank-dated copies. *Id.* ¶ 7. Plaintiff did, however, sign a Notice of Right To Cancel form as to the 2005 Pepeekeo loan. *See* Defs.' Ex. 14.

In March 2006, Plaintiff refinanced the Subject Properties again, this time with AMC. Plaintiff obtained a loan for $405,000 secured by a mortgage on the Pepeekeo Property dated March 31, 2006 and recorded on May 3, 2006, Defs.' CSF ¶ 4, and a second loan for $217,800 secured by a mortgage on the Hilo Property dated March 31, 2006 and recorded on May 3, 2006. *Id.* ¶ 5. The loan proceeds from the March 2006 refinancings were used to discharge the 2005 mortgages on the Subject Properties, as well as to pay off some of Plaintiff's other debts. *Id.* ¶ 6; *see also* Pl.'s Exs. A, D.

Plaintiff asserts that similar to the 2005 transactions, she again "was provided with inaccurate and confusing good faith disclosures, this time by AMC

---

documents and wrongful harassing collection tactics").

and its representatives, who additionally without my knowledge falsified my gross monthly income" on the loan applications.  Pl.'s Decl. ¶¶ 12, 14; *see also* Pl.'s Exs. G, I.  Plaintiff further asserts that AMC did not tell Plaintiff of less expensive options to secure these mortgages, resulting in Plaintiff receiving more expensive loans, which generated unnecessary commissions and fees.  Pl.'s Decl. ¶¶ 15-16.  AMC also allegedly misrepresented to Plaintiff that these loans had fixed interest rates, but upon closing, the rates were switched to adjustable rates, causing Plaintiff to refuse to sign the majority of the loan documents.  *Id.* ¶ 17.  After Plaintiff refused to sign the closing documents, AMC allegedly forged Plaintiff's signature on the 2006 loan documents.  *Id.* ¶ 18.

On April 4, 2006, Plaintiff attempted to cancel the 2006 refinancing loans by faxing to AMC formal written notices of cancellation on the forms that AMC had provided.  *Id.* ¶¶ 19-20; Pl.'s Ex. J.  AMC refused to recognize Plaintiff's cancellation, even though Plaintiff made subsequent written and oral demands.  Pl.'s Decl. ¶ 21; Pl.'s Exs. K-L.

In June 2006, AMC attempted to conduct nonjudicial foreclosure auctions on the Subject Properties, which forced Plaintiff to sell the Hilo Property for a loss on February 22, 2007.  Pl.'s Decl. ¶ 23; *see also* Defs.' CSF ¶ 7.  On April 11, 2007, the Hilo loan was satisfied and the Hilo mortgage discharged,

leaving the Pepeekeo mortgage as the only existing mortgage in this action.  Defs.'
CSF ¶ 8.  On February 27, 2009, AMC assigned the Pepeekeo Mortgage to
Deutsche Bank National Trust Company ("Deutsche Bank").  Defs.' Ex. 13.

Plaintiff asserts that as a result of Defendants' failure to cancel the
loans, Plaintiff has been harassed with constant collection calls and mailings, and
has suffered irreparable harm of her credit being damaged, the loss of credit lines
personally and for her business, humiliation in her office among her workers and in
the local business community, having to pay new license bonding requirements due
to the appearance of resulting financial instability, marital difficulties and related
stress, headaches, loss of sleep, and severe emotional distress.  Pl.'s Decl.
¶ 24.

**B.    Procedural Background**

On April 27, 2009, Plaintiff filed her Complaint in the Circuit Court
of the Third Circuit of the State of Hawaii.  The Complaint alleges a claim against
both Defendants for violation of TILA seeking rescission and damages (Count I),
and state law claims against AMC for contractual rescission and/or breach of
contract (Count II), unfair and deceptive acts and practices in violation of Hawaii
Revised Statutes ("HRS") Ch. 480 (Count III), fraud (Count IV), negligent
infliction of emotional distress (NIED) and intentional infliction of emotional

distress ("IIED") (Count VI), and punitive damages (Count V). On April 14, 2010, Defendants removed the action to this court.

On May 5, 2010, Defendants filed their Motion for Summary Judgment. On June 24, 2010, Plaintiff filed her Opposition, and Defendants filed their Reply on July 1, 2010. A hearing was held on July 12, 2010.

## III. <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has

carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

///

///

7

# IV.  DISCUSSION

Defendants argue that summary judgment should be granted on Plaintiff's TILA claim because she is not entitled to rescission on any of the loans, and her other claims lack merit.[3]  The court addresses Defendants' arguments in turn.

## A.      Violation of TILA (Count I)

Plaintiff bases her TILA claim for rescission on four different loan transactions -- the 2005 and 2006 mortgages on the Hilo Property, and the 2005 and 2006 mortgages on the Pepeekeo Property.  Defendants argue that summary judgment should be granted because, among other reasons, Plaintiff's refinancing of the 2005 loans extinguished the right of rescission, Plaintiff's right to rescind on any transaction involving the Hilo Property expired upon its sale, and any of Plaintiff's remaining claims for rescission are time-barred.  Based on the following, the court agrees with Defendants' arguments.

///

///

---

[3]  In their Reply, Defendants additionally argue that summary judgment should be granted on any argument not specifically addressed by Plaintiff.  Defs.' Reply 4.  Defendants cite absolutely no support for this extraordinary proposition, and the court rejects that a non-movant's failure to respond to a summary judgment argument relieves the movant of its burden of establishing the absence of any genuine issue of material fact.

### 1.     The 2005 Loan Transactions

Defendants argue that summary judgment is appropriate on Plaintiff's TILA claims as to the 2005 Pepeekeo loan and the 2005 Hilo loan because both were refinanced and have since been satisfied.  The court agrees.

*King v. California*, 784 F.2d 910 (9th Cir. 1986), addresses this issue squarely.  Confronted with the issue of whether a plaintiff could seek rescission after a loan had been refinanced, *King* held that "the [initial] loan cannot be rescinded, because there is nothing to rescind . . . the deed of trust underlying the [initial] loan has been superseded."  *King*, 784 F.2d at 913.  Accordingly, Plaintiff cannot seek rescission of the 2005 loans because once she refinanced these loans, nothing remained to rescind.

In opposition, Plaintiff argues that the court should not follow *King* for several reasons.  Plaintiff's arguments lack merit.

First, Plaintiff argues that the language in *King* stating that "there is nothing to rescind" is dicta.[4]  Pl.'s Opp'n at 15.  Contrary to Plaintiff's assertion, *King* directly addresses whether a plaintiff may seek rescission on a loan that has been refinanced.  Indeed, *King* even explained that "[b]ecause it is unclear whether

---

[4] Plaintiff also argues that the court should ignore *King* because the plaintiff in *King* was in bankruptcy and therefore the court could only properly exercise jurisdiction over her trustee. Because the court will not examine the record of a Ninth Circuit published case to determine potential errors, the court rejects this argument.

the district court dismissed for failure to conform to local rules or dismissed on the merits, in the interests of justice we review the dismissal of the federal claims as going to the merits." *King*, 784 F.2d at 912; *see also Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1096 (N.D. Cal. 2008) (holding that *King's* statement regarding refinancing was not dictum); *Velazquez v. GMAC Mortgage Corp.*, 605 F. Supp. 2d 1049, 1059 (C.D. Cal. 2008) (same).

Plaintiff also argues that *King* conflicts with the Federal Reserve Board's interpretation of TILA, Regulation Z, which is the official controlling interpretation of TILA.  Regulation Z provides that "the right to rescind shall expire 3 years after consummation, upon transfer of all the consumer's interest in the property, or upon the sale of the property, whichever occurs first."  12 C.F.R. § 226.23(a)(3).  This language -- the only part of Regulation Z to address rescission -- is silent regarding refinancing and thus does not conflict with *King*. Further, even if Regulation Z did contradict *King*, "the Federal Reserve's authority to promulgate this portion of Regulation Z apparently derives from [TILA]," such that "the Ninth Circuit's interpretation of the statute must also guide the Court's interpretation of the regulation." *Plascencia*, 583 F. Supp. 2d at 1096-97.

While not entirely clear, Plaintiff also appears to argue that changes to either Regulation Z or TILA itself have superseded *King*.  As an initial matter,

Plaintiff does not identify any specific changes that undermine *King*, and the court is aware of none. Rather, the amendments to TILA that have addressed rescission have left the holding of *King* untouched. *See Plascencia*, 583 F. Supp. 2d at 1096; *Velazquez*, 605 F. Supp. 2d at 1059.

Finally, Plaintiff argues that *King* has been "completely discredited and rejected as unpersuasive and contrary to controlling Congressional TILA amendments and . . . Regulation Z." Pl.'s Opp'n at 18. The cases cited by Plaintiff do not support this proposition. Plaintiff correctly identifies a circuit split on this issue -- other circuits disagree with *King* because even after refinancing, a mortgagee could still rescind the original transaction fees received from the mortgagor. *See, e.g.*, *Barrett v. JP Morgan Chase Bank*, 445 F.3d 874, 880 (6th Cir. 2006); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 765 (7th Cir. 2006). While these decisions contradict *King*, "district courts are, of course, bound by the law of their own circuit, and are not to resolve splits between circuits no matter how egregiously in error they feel their own circuit to be." *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987).

Accordingly, the court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's TILA claim for rescission as to the 2005 Pepeekeo loan and the 2005 Hilo loan.

### 2.     *The 2005 and 2006 Hilo Property Loans*

Defendants argue that because Plaintiff sold the Hilo Property, Plaintiff's right to rescind the 2005 and/or 2006 Hilo loan expired on the date of sale.[5]

TILA provides in relevant part that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  15 U.S.C. § 1635(f).  Once an obligor sells its home, takes control of the loan proceeds, and pays off the loan, "the TILA rescission provision no longer appli[es] and only the damages provision remain[s] as a cause of action."  *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003); *see also* 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."); *Kruse v. U.S. Bank N.A.*, 2010 WL 743509, at *3 (D. Colo. Mar. 1, 2010) (finding that the "plain language" of 15 U.S.C. § 1635(f) bars injunctive relief of rescission where property was sold after commencement of action).

---

[5]  While Plaintiff's TILA claim for rescission based on the 2005 Hilo loan expired when it was refinanced, this analysis below provides an alternative basis for summary judgment on Plaintiff's 2005 Hilo loan TILA claim.

Applying this principle, Plaintiff's right to rescission on any of the loan transactions for the Hilo Property expired when Plaintiff sold the Hilo Property on February 22, 2007.  Accordingly, the court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's TILA claim for rescission as to the 2005 and 2006 Hilo loans.

### 3.  *The 2006 Pepeekeo Property Loan Transaction*

Defendants argue that summary judgment should be granted on Plaintiff's TILA claims arising out of the 2006 Pepeekeo loan[6] because Plaintiff did not file this action within three years of consummation of the loan and mortgage as required by 15 U.S.C. § 1635(f).  Based on the following, the court agrees that Plaintiff's TILA claim for rescission as to the 2006 Pepeekeo loan is time-barred.

Under TILA, "an obligor's right of rescission shall expire three years after the date of consummation."  15 U.S.C. § 1635(f).  Regulation Z specifies that consummation occurs at the time a consumer becomes contractually obligated. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).  The time a consumer is contractually obligated is determined by state law.  *Id.*  In Hawaii, a credit sale contract such as a mortgage loan must be in

---

[6] The following analysis also applies to the 2005 Hilo loan.

13

writing, refer to all relevant parties, and be signed by the parties. *See* HRS § 476-3(a)(1)-(3).

On March 31, 2006, Plaintiff consummated the 2006 Pepeekeo loan by signing the loan agreement. *See* Defs.' Ex. 3. On April 4, 2006, Plaintiff provided AMC with notice of her intent to cancel this loan, and Plaintiff brought this action against Defendants on April 27, 2009. Pl.'s Ex. K. In sum, Plaintiff gave AMC written notice of her intent to cancel within three years, but she did not file this action until more than three years after the consummation of the loan transaction. Accordingly, at issue is whether any of Plaintiff's efforts can be construed as satisfying the three-year "right of rescission" provided by § 1635(f).

TILA does not define the "right of rescission," and it is unclear from the statute whether an obligor who merely provides written notice of intent to rescind, but does not file an action within three years, retains a valid right of rescission. Some courts have interpreted this "right of rescission" as requiring a plaintiff to file an action within three years of consummation. These courts reason that § 1635(f) represents an "absolute limitation of rescission actions which bars any claims filed more than three years after the consummation of the transaction." *See Sam v. Am. Home Mortgage Serv.*, 2010 WL 761228, at * 2 (E.D. Cal. Mar. 3, 2010); *see also Falcocchia v. Saxon Mortgage Inc.*, --- F.3d ---, 2010 WL 582059,

at *4 (E.D. Cal. Feb. 12, 2010); *Caliguiri v. Columbia River Bank Mortgage Group*, 2007 WL 1560623, at *5 (D. Or. May 22, 2007).

Other courts have construed the "right of rescission" as requiring only that a plaintiff provide notice of rescission.  Every district court within the Ninth Circuit to endorse this approach, however, has further "found that the plaintiff must bring the claim within one year of the creditor's denial or failure to respond." *See, e.g.*, *Pierce v. Bank of Am. Home Loans*, 2010 WL 2348637, at *5 (N.D. Cal. June 8, 2010; *Santos v. Countrywide Home Loans*, 2009 WL 2500710, at *4 (E.D. Cal. Aug. 14, 2009); *Horton v. Cal. Credit Corp. Ret.*, 2009 WL 700223, at *5 (S.D. Cal. Mar. 16, 2009).  These courts have found that once a plaintiff provides notice of rescission, § 1640(e) and not § 1635(f) applies, requiring the plaintiff to file an action "within one year from the date of the occurrence of the violation." *Pierce*, 2010 WL 2348637, at *5.

The court need not determine which of these interpretations is correct -- Plaintiff's TILA claim for rescission is time-barred under either interpretation.  Under the first approach, Plaintiff's April 27, 2009 Complaint was not filed within three years of consummation of the March 31, 2006 Pepeekeo loan transaction.  Further, under the second approach, Plaintiff filed a notice of cancellation with AMC on April 4, 2006, and AMC's denial and/or failure to respond is

demonstrated by Plaintiff's multiple follow-up requests that AMC did not honor. *See* Pl.'s Exs. K, L.  AMC's denial and/or failure to respond therefore occurred sometime in 2006, such that Plaintiff's ability to file suit became untimely at some point in 2007, well before Plaintiff filed this action on April 27, 2009.

Accordingly, the court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's TILA claim for rescission as to the 2006 Pepeekeo loan.[7]

## B.    Breach of Contract (Count II)

AMC argues that Plaintiff's breach of contract claim fails because (1) as to the Hilo loan transactions, Plaintiff sold the Hilo Property and the Hilo mortgages are discharged such that no contract exists; and (2) as to the Pepeekeo loan transactions, Plaintiff has waived this claim by continuing to make payments on the loans.[8]  Defs.' Mot. 10-11.  AMC's arguments are not persuasive.

Regarding the Hilo loan transactions, Plaintiff's sale of the Hilo

---

[7]  At the July 12, 2010 hearing, Plaintiff conceded that if her TILA claim for rescission is time-barred, her TILA claim for damages fails as well.  The court agrees that Plaintiff's TILA claim for damages is time-barred.  *See* 15 U.S.C. § 1640(e) (providing that a TILA claim must be brought "within one year from the date of the occurrence of the violation"); *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) (providing that in "the appropriate circumstances," the limitations period may be suspended "until the borrower discovers or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action").  Accordingly, the court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's TILA claim for damages.

[8]  In the Reply, AMC also argues that Plaintiff's common law claims are preempted by TILA.  The court will not address arguments made for the first time in a reply brief.  *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

Property does not terminate Plaintiff's breach of contract claim -- there is no requirement that a breach of contract claim be brought on a *present* contract.[9]  *See Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Haw. 286, 303-04, 141 P.3d 459, 476 (2006) (discussing instruction requiring jury to find that there was a contract and that Plaintiffs breached the contract).

Regarding the Pepeekeo loan transactions, the court rejects that Plaintiff's continued payments to AMC somehow waived her breach of contract claim.  AMC has not proven its proffered proposition of law -- that an innocent party waives a breach of contract claim where she continues to perform with no conditions attached -- applies in this scenario.  According to AMC's logic, Plaintiff should have either stopped making payments to AMC, or conditioned her payments on AMC recognizing that she had cancelled the loans.  Given the uneven bargaining positions of the parties and potential threat of foreclosure, the court declines to adopt such a rule to these facts.  Further, even if the court accepts that waiver is possible, the facts, viewed in a light most favorable to Plaintiff, do not support that she waived her claim.  Rather, Plaintiff repeatedly demanded that AMC recognize her cancellation of the loans, raising a fact question whether her

---

[9]  AMC cites to *Marshall Construction Co. v. Bigelow*, 29 Haw. 48, 58 (Haw. Terr. 1926), for the proposition that a plaintiff has no right to recover damages for breach of contract where there is no contract.  *Marshall*, however, addresses the situation where there was *never* any contract between the parties.

payments were conditioned on AMC recognizing her cancellation of the transactions.

The court therefore DENIES AMC's Motion for Summary Judgment on Plaintiff's breach of contract claim.

## C.   Fraud (Count IV)

In support of her fraud claim, Plaintiff asserts, among other things, that as to the 2006 mortgage loans, AMC (1) did not tell Plaintiff of less expensive options to secure these mortgages, Pl.'s Decl. ¶¶ 15-16; (2) misrepresented to Plaintiff that these loans had fixed interest rates, *Id.* ¶ 17; and (c) forged Plaintiff's signature on the 2006 loan documents, "apparently by using or tracing the 2005 loan paperwork that I had previously signed in closing the prior loans." *Id.* ¶ 18.

AMC seeks summary judgment on Plaintiff's fraud claim on the basis that the Complaint fails to plead with particularity the circumstances constituting fraud as required by Federal Rule of Civil Procedure 9(b), and that Plaintiff cannot prove that her signature was forged.  Defs.' Mot. 11-13.  The court rejects these arguments.

As an initial matter, AMC has confused summary judgment, which dismisses a claim with prejudice, with a motion to dismiss for failure to state a claim, which may allow a plaintiff to amend the pleading.  At issue on summary

judgment is whether the evidence presented establishes a genuine issue of material fact supporting Plaintiff's claims, and not whether Plaintiff has sufficiently pled her claims.  *See Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1038 (9th Cir. 2000) (reversing grant of summary judgment where it appeared that the district court "inappropriately applied Fed. R. Civ. P. 9(b), requiring particularity in the pleading of fraud, to a summary judgment motion where evidence, not pleading, was to be considered").  Accordingly, by raising Rule 9(b) in the context of a motion for summary judgment, AMC has neither met its summary judgment burden nor raised Rule 9(b) in a proper context for the court to address.

Regarding Plaintiff's assertion that her signature on the 2006 documents was forged, AMC argues that it would have been impossible to use Plaintiff's signature from the 2005 loan documents to make it appear as if she signed the 2006 mortgages.  AMC's argument misses the mark -- regardless of Plaintiff's speculation regarding how AMC got Plaintiff's signature on the 2006 loan and/or mortgage documents, the gravamen of Plaintiff's assertion is that she did not sign them and that AMC must therefore have placed her signature on them. Plaintiff's denial that she signed the 2006 loan documents and the appearance of her signature on the 2006 documents is sufficient to raise a fact issue supporting

Plaintiff's fraud claim.  The court therefore DENIES AMC's Motion for Summary

Judgment on Plaintiff's fraud claim.

**D.     HRS Chapter 480 (Count III)**

Pursuant to HRS § 480-2(a), "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce are

unlawful."  Section 480-13(a)(1) explains that any consumer "who is injured by

any unfair or deceptive act . . . may sue for damages . . . ."   A "deceptive act or

practice" is "(1) a representation, omission, or practice [] that (2) is likely to

mislead consumers acting reasonably under the circumstances [where] (3) [] the

representation, omission, or practice is material."  *Courbat v. Dahana Ranch, Inc.*,

111 Haw. 254, 262, 141 P.3d 427, 435 (2006) (quotation and citation signals

omitted, brackets in original).

AMC argues that Count III of the Complaint must be dismissed

because (1) given that Plaintiff's other claims lack merit, Plaintiff has no

supportable allegations of wrongdoing to support this claim; and (2) Plaintiff's

allegations of "bait and switch tactics," "harassing collection tactics," "forged loan

documents," and "churning," do not demonstrate a violation of HRS Ch. 480.  The

court rejects AMC's arguments.

As for AMC's first argument, as described above, Plaintiff's claims

20

for breach of contract and fraud survive the Motion for Summary Judgment such that Plaintiff still has supportable allegations of wrongdoing to support this claim.

As for AMC's second argument, to the extent AMC again improperly focuses on the allegations of the Complaint as opposed to whether there is a genuine issue of material fact to support this claim, AMC has not carried its summary judgment burden.  Further, to the extent that AMC argues that Plaintiff cannot prove her allegations of "bait and switch tactics," "harassing collection tactics," "forgery," and "churning,"[10] these labels are not themselves relevant, but rather the focus for summary judgment is on the evidence of AMC's alleged misconduct.  Viewed in a light most favorable to Plaintiff, genuine issues of material fact remain supporting this claim.

Regarding Plaintiff's assertion of "bait and switch tactics," Plaintiff asserts that AMC misrepresented to Plaintiff that these loans had fixed interest rates.  Pl.'s Decl. ¶ 17.  While AMC argues that it made no misrepresentations because the terms of the loans were outlined in the documents and Plaintiff was not misled because she did not sign a majority of the loan documents, the court nonetheless finds that genuine issues of material fact remain.  Specifically, it is a

---

[10]  The court addresses only those allegations raised by Defendants, and this Order should not be read as suggesting that this claim is necessarily limited by the allegations raised by Defendants.  The court further rejects Defendants' arguments regarding Plaintiff's allegations of forgery for the same reasons discussed above regarding Plaintiff's fraud claim.

question of fact whether AMC's alleged oral misrepresentations would mislead a reasonable consumer to seek mortgage loans from AMC and ultimately enter into these transactions -- Plaintiff signed some of the loan documents, and Defendants acted as if the loan transaction was completed.  *See, e.g.*, *Haw. Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213, 227, 11 P.3d 1, 15 (2000) (finding that borrower raised a genuine issue of material fact that mortagee's conduct was a "bait and switch" where the loan officer represented prior to closing that the borrower would be charged a lower interest rate than what was charged at closing, and told the borrower that it would be "no problem" to lower the rate later).

As for Plaintiff's assertion of "harassing collection tactics," AMC argues that its actions do not meet the statutory definition of "harassment" provided in HRS § 604-10.5(a)(2).  AMC fails to explain how HRS § 604-10.5 -- which outlines the courts' power to enjoin harassment -- controls in determining whether AMC's conduct constituted a deceptive act or practice as contemplated by HRS § 480-2.  Further, Plaintiff asserts that even though she notified AMC of her cancellation of the 2006 loans, AMC continued its foreclosure proceedings and attempts to collect on the loans.  Under these circumstances, it is a question of fact whether this conduct is an unfair and deceptive trade practice.

Finally, AMC argues that Plaintiff cannot prove any "churning"

22

because this term -- at least as defined against broker-dealers -- occurs only where the broker exercises control over the individual's finances and makes discretionary decisions regarding the number and type of transactions on behalf of an investor. *See* Defs.' Mot. 17-18.  The court rejects AMC's attempt to apply a technical definition of churning in the broker-dealer context to these mortgage transactions. In this context, the court understands Plaintiff's use of "churning" to refer to Plaintiff's assertion that AMC did not tell Plaintiff of less expensive options to secure these mortgages, causing Plaintiff to have more expensive loans while at the same time generating unnecessary commissions and fees for AMC.  *See* Pl.'s Decl. ¶¶ 15-16.  AMC fails to address how these assertions do not amount to an unfair trade practice in violation of HRS § 480-2.

Accordingly, the court DENIES AMC's Motion for Summary Judgment on Plaintiff's claim for violation of HRS § 480-2.

**E.     NIED and IIED (Count V)**

AMC argues that summary judgment should be granted on Plaintiff's NIED claim because she suffered no physical injury, and as well as on her IIED claim because there is no evidence that Defendants acted in an unreasonable or egregious manner.  The court addresses each argument in turn.

### 1.    NIED

A plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Doe Parents No. 1 v. Dep't of Educ.*, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002) (citation and internal quotation marks omitted).  To maintain an NIED claim, a person must generally allege "that *someone* was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." *Id.* at 580-81; *see also Kahoʻohanohano v. Dep't of Human Serv.*, 117 Haw. 262, 306-07, 178 P.3d 538, 582-83 (2008).

Viewing the evidence presented in a light most favorable to Plaintiff, the court finds that genuine issues of material fact exist whether Plaintiff suffered physical injury sufficient to support her NIED claim.  *See* Pl.'s Decl. ¶ 24.  The court therefore DENIES AMC's Motion for Summary Judgment as to Plaintiff's NIED claim.

### 2.    IIED

As a preliminary matter, AMC applies the incorrect elements of an IIED claim.  *See* Defs.' Mot. 20.  Prior to *Hac v. Univ. of Haw.*, 102 Haw. 92, 73 P.3d 46 (2003), the elements of IIED were "(1) that the act allegedly causing the harm was intentional; (2) that the act was unreasonable; and (3) that the actor

should have recognized that the act was likely to result in illness." *Hac*, 102 Haw. at 105, 73 P.3d at 59 (quotation signals omitted). *Hac*, however, established the following elements of an IIED claim: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Id*. at 106-07, 73 P.3d at 60-61 (adopting approach set forth in the Restatement (Second) of Torts) (emphasis added). On this basis alone, AMC has not carried its summary judgment burden on Plaintiff's IIED claim.

Further, to the extent the court construes AMC's argument as arguing that AMC engaged in no outrageous conduct, the evidence viewed in a light most favorable to Plaintiff suggests otherwise. The Restatement describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965).  "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury."  *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004) (citing *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 387, 14 P.3d 1049, 1068 (2000)).

As described above, Plaintiff asserts that AMC, among other things, forged her signature on the 2006 loans, refused to honor Plaintiff's right of cancellation of the loans when she discovered the forgeries, and commenced foreclosure proceedings against Plaintiff when she failed to make her loan payments.  The court finds that whether this conduct constitutes outrageous conduct is a question for the jury.  The court therefore DENIES AMC's Motion for Summary Judgment on Plaintiff's IIED claim.

**F.    Count VI: Punitive Damages**

Because Plaintiff's IIED claim survives summary judgment, the court denies AMC's derivative request for summary judgment of Plaintiff's incidental claim for punitive damages.  *See Kang v. Harrington*, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action."); *see also Lee v. Aiu*, 85 Haw. 19, 34, 936 P.2d 655, 670 (1997) (holding

record contained substantial evidence that defendants engaged in "aggravated or outrageous misconduct" required to impose punitive damages where IIED claim also stood).  Thus, the court DENIES Defendants' Motion for Summary Judgment on Count VI of the Complaint.

## V.  **CONCLUSION**

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.  Plaintiff's state law claims against AMC remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 2, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Bass v. Ameriquest Mort. Co. et al.*, Civ. No. 09-00476 JMS/BMK, Order Granting in Part and Denying in Part Defendants' Ameriquest Mortgage Company and AMC Mortgage Services, Inc.'s Motion for Summary Judgment