IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAURIE ANN BASS, | ) | CIVIL NO. 09-00476 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY; | ) | |
| AMC MORTGAGE SERVICES, INC.; | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, AS TRUSTEE FOR | ) | |
| ARGENT SECURITIES INC., | ) | |
| ASSET-BACK PASSTHROUGH | ) | |
| CERTIFICATES, SERIES 2006-M1, | ) | |
| UNDER THE POOLING AND | ) | |
| SERVICING AGREEMENT DATED | ) | |
| JUNE 1, 2006; and DOES 1-30, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT DEUTSCHE BANK'S MOTION FOR
SUMMARY JUDGMENT AND GRANTING IN PART AND
<u>DENYING IN PART DEFENDANT AMC'S MOTION FOR SUMMARY JUDGMENT</u>**

On August 31, 2011, Defendant Deutsche Bank National

Trust Company as Trustee for Argent Securities Inc. Asset-Back

Passthrough Certificates, Series 2006-M1, Under the Pooling And

Servicing Agreement Dated June 1, 2006 ("Deutsche Bank"), filed

its Motion for Summary Judgment ("Deutsche Bank Motion"), and

Defendant AMC Mortgage Services, Inc. ("AMC") filed its Motion

for Summary Judgment ("AMC Motion").  Plaintiff filed her

memorandum in opposition to the Deutsche Bank Motion and her

memorandum in opposition to the AMC Motion on November 10, 2011;

Deutsche Bank filed its reply on November 17, 2011; and AMC filed

its reply on the same date.  These matters came on for hearing on November 30, 2011.  Appearing on behalf of AMC and Deutsche Bank were Jael Makagon, Esq., and Jade Ching, Esq., and appearing on behalf of Plaintiff was Gary Dubin, Esq.  After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Deutsche Bank Motion is HEREBY GRANTED, and the AMC Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

### BACKGROUND

Plaintiff filed this action on April 27, 2009 in state court.  The original Defendants were AMC, Ameriquest Mortgage Company ("Ameriquest"), Citi Residential Lending ("Citi"), and American Home Mortgage Servicing, Inc. ("AHMSI").[1]  Plaintiff's Complaint for Rescission, for Breach of Contract, for Unfair and Deceptive Acts and Practices, for Mortgage Fraud, for Punitive Damages, and for Negligent Infliction of Severe Emotional Distress ("Complaint") alleged the following claims:

• a claim against Ameriquest, AMC, Citi, and AHMSI for rescission and damages for violations of the Federal Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1635(b), 1641(c);
• a claim against AMC, Citi, and AHMSI for rescission and damages for breach of contract;
• a claim against AMC, Citi, and AHMSI for rescission and damages for unfair and deceptive acts and practices ("UDAP") in

---

[1] On July 21, 2010, United States District Judge J. Michael Seabright, who presided over the case before it was reassigned to this Court, approved Plaintiff's notice that she was voluntarily dismissing all claims against Citi and AHMSI with prejudice. [Dkt. no. 41.]

violation of Haw. Rev. Stat. Chapter 480;
- a claim against AMC, Citi, and AHMSI for rescission and damages for mortgage fraud;
- a claim against AMC for punitive damages; and
- a intentional and/or negligent infliction of emotional distress claim against AMC, Citi, and AHMSI.

AHMSI removed the action on October 8, 2009 based on diversity jurisdiction.  [Notice of Removal of Action to Federal Court Under 28 U.S.C. § 1441(a), (b) (Diversity) at ¶ 7.]

Ameriquest and AMC filed a Motion for Summary Judgment ("2010 Summary Judgment Motion") on May 5, 2010.  [Dkt. no. 20.] Judge Seabright issued an order granting the 2010 Summary Judgment Motion in part and denying it in part on August 3, 2010 ("8/3/10 Summary Judgment Order").  Bass v. Ameriquest Mortg. Co., Civil No. 09-00476 JMS/BMK, 2010 WL 3025167 (D. Hawai`i Aug. 3, 2010).  The relevant factual background in this case is set forth in the 8/3/10 Summary Judgment Order.

In June 2005, Plaintiff refinanced her mortgages on the Subject Properties[2] with Ameriquest.  Specifically, Plaintiff obtained one loan for $350,000 secured by a mortgage on the Pepeekeo Property dated June 2, 2005 and recorded on June 14, 2005, and a second loan for $185,000 secured by a mortgage on the Hilo Property dated June 2, 2005 and recorded on June 17, 2005. Plaintiff asserts that at the time of closing for both these transactions, she "was provided with inaccurate and confusing good faith disclosures by Ameriquest and its representatives, who additionally without my knowledge falsified my gross monthly income" on the loan applications.

---

[2] The "Subject Properties" are: 711 Kakuahanoa Avenue, Hilo, Hawaii 96720 (the "Hilo Property"); and 28-535 Kulaimano Road, Pepeekeo, Hawaii 96783 (the "Pepeekeo Property").

Plaintiff also asserts that Ameriquest induced her to take both loans by promising her "cheaper loans than what I eventually received, changing the terms on me at closing, while promising me that I could refinance later with better rates."  As to the Pepeekeo loan transaction, Plaintiff further asserts that she did not receive at closing or at any time thereafter two completed copies of the Notice of Right To Cancel form, but instead received only three blank-dated copies.  Plaintiff did, however, sign a Notice of Right To Cancel form as to the 2005 Pepeekeo loan.

In March 2006, Plaintiff refinanced the Subject Properties again, this time with AMC. Plaintiff obtained a loan for $405,000 secured by a mortgage on the Pepeekeo Property dated March 31, 2006 and recorded on May 3, 2006, and a second loan for $217,800 secured by a mortgage on the Hilo Property dated March 31, 2006 and recorded on May 3, 2006.  The loan proceeds from the March 2006 refinancings were used to discharge the 2005 mortgages on the Subject Properties, as well as to pay off some of Plaintiff's other debts.

Plaintiff asserts that similar to the 2005 transactions, she again "was provided with inaccurate and confusing good faith disclosures, this time by AMC and its representatives, who additionally without my knowledge falsified my gross monthly income" on the loan applications. Plaintiff further asserts that AMC did not tell Plaintiff of less expensive options to secure these mortgages, resulting in Plaintiff receiving more expensive loans, which generated unnecessary commissions and fees.  AMC also allegedly misrepresented to Plaintiff that these loans had fixed interest rates, but upon closing, the rates were switched to adjustable rates, causing Plaintiff to refuse to sign the majority of the loan documents.  After Plaintiff refused to sign the closing documents, AMC allegedly forged Plaintiff's signature on the 2006 loan documents.

On April 4, 2006, Plaintiff attempted to cancel the 2006 refinancing loans by faxing to AMC formal written notices of cancellation on the forms that AMC had provided.  AMC refused to recognize Plaintiff's cancellation, even though Plaintiff made subsequent written and oral demands.

>           In June 2006, AMC attempted to conduct
> nonjudicial foreclosure auctions on the Subject
> Properties, which forced Plaintiff to sell the
> Hilo Property for a loss on February 22, 2007.  On
> April 11, 2007, the Hilo loan was satisfied and
> the Hilo mortgage discharged, leaving the Pepeekeo
> mortgage as the only existing mortgage in this
> action.  On February 27, 2009, AMC assigned the
> Pepeekeo Mortgage to Deutsche Bank National Trust
> Company . . . .
>           Plaintiff asserts that as a result of
> Defendants' failure to cancel the loans, Plaintiff
> has been harassed with constant collection calls
> and mailings, and has suffered irreparable harm of
> her credit being damaged, the loss of credit lines
> personally and for her business, humiliation in
> her office among her workers and in the local
> business community, having to pay new license
> bonding requirements due to the appearance of
> resulting financial instability, marital
> difficulties and related stress, headaches, loss
> of sleep, and severe emotional distress.

Id. at *1-2 (footnotes and citations omitted).

In the 8/3/10 Summary Judgment Order, Judge Seabright granted Ameriquest and AMC summary judgment as to Plaintiff's TILA rescission and damages claims.  Id. at *5-7 & n.7.  Judge Seabright denied summary judgment to AMC on Plaintiff's breach of contract claim, fraud claim, UDAP claim, negligent infliction of emotional distress ("NIED") claim, and intentional infliction of emotional distress ("IIED") claim.  Further, he denied AMC summary judgment on the claim for punitive damages because it was derivative of the IIED claim, which survived summary judgment. Id. at *7-11.

Pursuant to the parties' stipulation, [filed 9/23/10 (dkt. no. 51),] Plaintiff filed her First Amended Complaint for

Rescission, for Breach of Contract, for Unfair and Deceptive Acts and Practices, for Mortgage Fraud, for Punitive Damages, and for Negligent Infliction of Severe Emotional Distress ("First Amended Complaint") on October 1, 2010.  [Dkt. no. 52.]  AMC and Deutsche Bank are the only defendants in the First Amended Complaint.  The First Amended Complaint alleges the following claims:

- a claim against AMC and Deutsche Bank for rescission and damages for breach of contract ("Count I");
- a UDAP claim against AMC and Deutsche Bank for rescission and damages ("Count II");
- a claim against AMC and Deutsche Bank for rescission and damages for mortgage fraud ("Count III");
- a claim against AMC for punitive damages ("Count IV"); and
- a intentional and/or negligent infliction of emotional distress claim against AMC ("Count V").

In addition to rescission and damages, the First Amended Complaint seeks attorneys' fees and costs, and any other relief the Court deems appropriate.  [First Amended Complaint at pg. 9.]

I.    **Deutsche Bank Motion**

        Deutsche Bank notes that the Pepeekeo Mortgage was assigned to Deutsche Bank in an Assignment of Mortgage dated February 27, 2009.  [Deutsche Bank's Concise Statement of Facts in Supp. of Its Motion for Summary Judgment ("Deutsche Bank CSOF"), filed 8/31/11 (dkt. no. 87), Exh. 6.]  Plaintiff alleges Counts I, II, and III against Deutsche Bank, but Plaintiff only seeks rescission against Deutsche Bank in Count I (breach of contract) and Count III (mortgage fraud).  [First Amended Complaint at ¶¶ 30, 32.]  In Count II (UDAP), Plaintiff states

that she seeks rescission and actual and treble damages from Deutsche Bank.  [Id. at ¶ 31.]

Plaintiff, however, has admitted that she neither has nor had a contract with Deutsche Bank.  Further, she could not identify any breaches of contract that Deutsche Bank allegedly committed.  [Deutsche Bank CSOF, Exh. 7 ("Pltf.'s Interrog. Responses") at 3, 5.]  Deutsche Bank therefore argues that it is entitled to summary judgment as to Count I.  [Mem. in Supp. of Deutsche Bank Motion at 4.]

Deutsche Bank next argues that Count III fails because the First Amended Complaint does not identify any allegedly wrongful conduct by Deutsche Bank.  AMC's alleged fraud cannot give rise to a fraud claim against Deutsche Bank.  [Id. at 5.]

Deutsche Bank also contends that Count II (UDAP) fails as a matter of law.  The First Amended Complaint does not allege that Deutsche Bank violated Haw. Rev. Stat. § 480-2, a required element of a UDAP claim under Haw. Rev. Stat. § 480-13(B)(1). Deutsche Bank argues that, because it was not the originating lender, it cannot be held liable for UDAPs that occurred during the origination of the loans.  Section 480-2 liability does not attach merely because of Deutsche Bank's status as an assignee. [Id. at 6-7.]

Deutsche Bank acknowledges that, under Hawai`i law, rescission is available as a remedy in appropriate cases.  [Id.

(citing <u>Golf Carts, Inc. v. Mid-Pacific Country Club</u>, 53 Haw. 357, 359, 493 P.2d 1338, 1339 (1972)).] Deutsche Bank contends that rescission is not available in this case because Plaintiff has no contract with Deutsche Bank that she can rescind, and she cannot establish a substantive claim that would entitle her to rescission. Further, Plaintiff has not tendered, nor has she established that she is able to restore the parties to the status quo. [<u>Id.</u> at 8 & nn.3-4.] Deutsche Bank therefore urges the Court to grant summary judgment in its favor as to all claims against it.

## II.  <u>Plaintiff's Opposition to the Deutsche Bank Motion</u>

In her memorandum in opposition to the Deutsche Bank Motion, Plaintiff emphasizes that Deutsche Bank does not contest the material facts of Ameriquest's and AMC's fraud and abuse. Plaintiff argues that Deutsche Bank is named as a party because Plaintiff cannot obtain rescission without Deutsche Bank's presence because Deutsche Bank claims to be the current owner of Plaintiff's note and mortgage. Further, Deutsche Bank is liable for rescission because, when it acquired the note and mortgage, Plaintiff was disputing the validity of the instruments and the loan was purportedly in default. Plaintiff also argues that Deutsche Bank has not shown that it paid anything for the assignment. Plaintiff argues that, under <u>Ocwen Federal Bank, FSB v. Russell</u>, 99 Hawai`i 173, 53 P.3d 312 (Ct. App. 2002), even a

8

holder in due course that exchanged valuable consideration for a note and mortgage is still subject to the obligor's claims and defenses under circumstances such as those in this case. [Mem. in Opp. to Deutsche Bank Motion at 2-3.]

In addition, Plaintiff asserts that Deutsche Bank's Assignment of Mortgage is fraudulent, having been executed by "robo signers", and because Deutsche Bank purchased Plaintiff's loan after the cut-off date for the trust. [Id. at 4.] Plaintiff emphasizes that she is not trying to enforce the terms of the Trust; she is merely "challenging Deutsche Bank's standing in this action[.]" [Id. at 5-6.] Plaintiff argues that Deutsche Bank is not a necessary party for Plaintiff to obtain rescission, and she urges this Court to hold Deutsche Bank in contempt and to order Deutsche Bank to pay for Plaintiff's fees and costs. Plaintiff emphasizes that signing, notarizing, and recording a false document in the Bureau of Conveyances are criminal offenses under Hawai`i law. [Id. at 6.]

Plaintiff therefore urges the Court to deny the Deutsche Bank Motion and to issue an order to show cause requiring Deutsche Bank to prove that it is the valid owner of Plaintiff's note and mortgage. If Deutsche Bank cannot do so, the Court should hold Deutsche Bank in contempt. [Id.]

## III. <u>Deutsche Bank's Reply</u>

In its reply, Deutsche Bank argues that Plaintiff

cannot demonstrate any genuine disputes of material fact and that Plaintiff's arguments are irrelevant and inflammatory.  [Deutsche Bank Reply at 2.]

Deutsche Bank notes that Plaintiff's opposition appears to forego any claim to damages from Deutsche Bank, focusing only on rescission.  Deutsche Bank argues that Ocwen does not support Plaintiff's rescission claim because that case involved rescission in the context of alleged TILA violations.  Plaintiff only asserts a claim against Deutsche Bank for rescission of the 2006 Pepeekeo Loan, and Plaintiff has no TILA claim for rescission of that loan.  Instead, her rescission claims are based on alleged breach of contract, fraud, and UDAPs.  As noted in the Deutsche Bank Motion, Plaintiff cannot identify any facts to support her breach of contract and fraud claims against Deutsche Bank.  [Id. at 3-4.]

The only facts that she alleges in support of her UDAP claim against Deutsche Bank is the purported invalidity of the Assignment of Mortgage.  Deutsche Bank argues that this claim fails a matter of law.  First, Deutsche Bank emphasizes that Plaintiff's allegations regarding robo signers are not contained in the First Amended Complaint, and therefore Deutsche Bank did not have fair notice of those allegations.  The Court should not consider those allegations.  [Id. at 4-6.]  Even if the Court did address the argument, Deutsche Bank contends that courts

10

routinely hold that a debtor does not have standing to challenge

an assignment between a lender and its assignee.  [Id. at 6-7

(some citations omitted) (citing Livonia Property Holdings,

L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C., 717 F.

Supp. 2d 724, 736-37 (E.D. Mich. 2010); Velasco v. Security Nat.

Mortg. Co., CV. No. 10-00239 DAE KSC, 2011 WL 4899935, at *4 (D.

Haw. Oct. 14, 2011)).]

        Finally, Deutsche Bank notes that, insofar as Plaintiff

now claims that Deutsche Bank is not needed as a defendant

because she can secure rescission without Deutsche Bank, this

Court should grant the Deutsche Bank Motion.  [Id. at 8 n.4.]

## IV.  AMC Motion

        AMC argues that it is entitled to summary judgment on

all of Plaintiff's claims.

### A.  Count I - Breach of Contract

        AMC first argues that it did not breach any contract

with Plaintiff.  Although Plaintiff contends that she timely

submitted formal written notices of cancellation and that AMC

acknowledged receipt thereof on April 4, 2006, the only evidence

she submitted in support of this is a facsimile confirmation

sheet.  [AMC's Concise Stat. of Facts in Supp. of Its Motion for

Summary Judgment ("AMC CSOF"), filed 8/31/11 (dkt. no. 90), Exh.

17.]  It indicates that the transmission was sent from (808)935-

9700 ("Plaintiff's Fax Number") and, in her deposition testimony,

11

Plaintiff confirmed that this was the only fax number that she used for business or personal reasons.  [Id., Exh. 3 (Excerpts of 5/17/11 Depo. of Plaintiff ("AMC Excerpts of Bass Depo.")) at 11.]  AMC, however, argues that Plaintiff did not actually send this facsimile because, a long distance charge for a facsimile from Plaintiff's Fax Number to a 949 area code would have appeared on Plaintiff's Hawaiian Telcom, Inc. ("Hawaiian Telcom") billing statement for April 4, 2006 to May 3, 2006 ("April Billing Statement"), and there is no such charge.  [AMC CSOF, Exh. 18 (April Billing Statement), Exh. 19 (Excerpts of 7/21/11 Depo. of Audrey Watson ("Watson Depo.")) at 11, 13-14, 16, 18-19.]  At her deposition, Plaintiff could not identify any charge in the April Billing Statement that confirmed her purported transmission of the cancellation notices.  [AMC Excerpts of Bass Depo. at 196.]  Further, when Plaintiff sent a facsimile to AMC from Plaintiff's Fax Number in June 2006, the charge was reflected in her billing statement for June 4, 2006 to July 3, 2006 ("June Billing Statement").  [AMC CSOF, Exh. 20 (June Billing Statement).]  AMC contends that Plaintiff fabricated the confirmation sheet.  [Mem. in Supp. of AMC Motion at 9 (citing Exh. 21 (Summary Report of Computer Forensics Examination)).]  AMC emphasizes that Plaintiff has the ability to fabricate such a document because of her extensive background with computers.  [Id. at 9-10 (citing AMC Excerpts of Bass Depo. at 26:6-8; 50:3-

18; 52:10-12, 20-25; 53:1-4).]  AMC contends that it is entitled

to summary judgment on Count I because Plaintiff cannot prove

that she timely submitted the cancellation notices.  [Id. at 10.]

### B.   Count II - UDAP

AMC points out that, contradicting her claim that she

signed the notes and mortgages and timely cancelled them,

Plaintiff also argues that her signatures on the documents are

forged and the forgery violates Haw. Rev. Stat. Chapter 480.  The

First Amended Complaint alleges that Plaintiff's signatures on

the 2006 loan documents were forged using the 2005 loan

paperwork.  AMC argues that there is no evidence to support this

claim.  [Id. at 10-11.]  Plaintiff cannot recall which loan

documents she signed and which she did not.  [AMC Excerpts of

Bass Depo. at 74-75, 86-87, 91-93, 105-06, 112-13, 115, 118, 119-

21, 123-33, 135-38, 140-45, 152-57, 163-73.]  The First Amended

Complaint concedes that Plaintiff cannot identify which 2005

document was used to forge the 2006 documents.  [First Amended

Complaint at ¶ 20.]  Plaintiff also testified that she cannot

remember signing the cancellation notices and, when presented

with those documents, she did not know whether the signatures on

them were hers.  [AMC Excerpts of Bass Depo. at 190-91.]

AMC submits a forensic handwriting report by Howard

Rile, who examined the original Pepeekeo Note and Pepeekeo

Mortgage, as well as the Hilo Note and Hilo Mortgage, and

13

compared Plaintiff's signatures on those documents to the undisputed examples of Plaintiff's signatures.  He concluded that the signatures on the Pepeekeo Note and Pepeekeo Mortgage and Plaintiff's exemplars were written by the same individual and that the signatures on the Hilo Note and Hilo Mortgage and Plaintiff's exemplars "were very probably written by the same individual."  [AMC CSOF, Exh. 22 at 4-5.]  AMC argues that Plaintiff has no proof that her signatures on the 2006 loan documents were forged.  [Mem. in Supp. of AMC Motion at 13.]

Plaintiff has testified that she stopped signing the loan documents, but she does not know at what point she stopped, nor does she know which documents she signed and which she did not.  [AMC Excerpts of Bass Depo. at 179, 93-94, 178.] Joyce Carlson, the Notary Public who notarized the Pepeekeo Mortgage, the Hilo Mortgage, and other documents related thereto, testified that, when she handles the signing of loan documents, she hands documents to the borrower one page at a time so that the borrower sees every page.  She has never tried to hide or cover the name of a document to be signed, and she would not force a borrower to sign a document that the borrower did not want to sign.  [AMC CSOF, Exh. 5 (Pepeekeo Mortgage), Exh. 8 (Hilo Mortgage), Exh. 23 (Excerpts of 7/20/11 Depo. of Joyce Carlson ("Carlson Depo.")) at 37, 64, 44-45, 23, 65-66.] Further, when a borrower signs mortgage documents in her presence

14

but changes his mind about proceeding with the loan, Ms. Carlson takes the documents with her and makes a notation in her Notary Book indicating that the borrower refused the loan. [Carlson Depo. at 29, 32.] Ms. Carlson testified that she followed her normal procedures for the signing of Plaintiff's loan documents, and she has no recollection of Plaintiff refusing to proceed. [Id. at 64, 66, 38.] Further, there is no indication in her Notary Book that Plaintiff terminated the signing. [AMC CSOF, Exh. 24 (Excerpts from Joyce Carlson's Notary Public Record Book).]

AMC argues that Plaintiff's bald allegations of forgery, without more, do not prevent summary judgment. AMC emphasizes that Plaintiff cannot deny that any particular signature on a particular loan document is hers, [AMC Excerpts of Bass Depo. at 178,] and AMC asserts that the forensic report and Ms. Carlson's testimony disprove Plaintiff's forgery claim. [Mem. in Supp. of AMC Motion at 16.]

AMC also argues that Plaintiff's allegation of wrongful nonjudicial foreclosure cannot support her UDAP claim because Plaintiff still holds title to the Pepeekeo Property and Plaintiff sold the Hilo Property to Christopher Brilhante. [Id. at 17 (citing AMC CSOF, Exhs. 15, 13).]

Further, Plaintiff's allegation of a "bait-and-switch" cannot support her UDAP claim. The First Amended Complaint

15

alleges that Plaintiff was promised a fixed interest rate for both loans, but the rates were switched to adjustable rates at the last minute.  [First Amended Complaint at ¶ 19.]  Plaintiff, however, testified that she cannot recall what specific rates she was promised; she just remembers that they were supposed to be lower.  Further, Plaintiff has no documentation of the promised rates, and she cannot remember who promised her the lower rates. [AMC Excerpts of Bass Depo. at 95, 180-81.]  AMC argues that, under <u>Hawaii Community Federal Credit Union v. Keka</u>, 94 Hawai`i 213, 227, 229, 11 P.3d 1, 15, 17 (2000), a bait-and-switch occurs when, at closing, the borrower is confronted with rate x although she was promised rate y, and the lender makes further deceptive representations to alleviate the borrower's concerns that she was not receiving the promised rate and represents that the actual rate is rate y.  [Mem. in Supp. of AMC Motion at 18-19.]  That did not happen in this case because no one from AMC was present at Plaintiff's signing, and she has not alleged any attempts by AMC to influence the final signing.  [AMC Excerpts of Bass Depo. at 106-07.]  AMC also emphasizes that Plaintiff is a sophisticated borrower, being a long time business owner, owning at least four pieces of property, and having prior experience with loans.  [Mem. in Supp. of AMC Motion at 19 (citing AMC Excerpts of Bass Depo. at 55, 27-28).]  Further, many of the loan documents, including the Pepeekeo Note and the Hilo Note, clearly

16

state that the interest rate is adjustable.  [AMC CSOF, Exhs. 4,
7, Exh. 25 (other Pepeekeo loan documents), Exh. 26 (other Hilo
loan documents)).]  AMC asserts there is no genuine dispute that
Plaintiff signed these documents and therefore she is bound by
them even if she did not read them.

     AMC next contends that Plaintiff's "churning"
allegation fails as a matter of law and cannot support her UDAP
claim.  The First Amended Complaint alleges that Plaintiff was
never informed of less expensive options for second mortgages.
[First Amended Complaint at ¶ 18.]  AMC emphasizes that Plaintiff
sought to refinance her 2005 loans; AMC did not initiate the
transactions.  [Mem. in Supp. of AMC Motion at 20 (citing AMC
Excerpts of Bass Depo. at 42, 152).]  Further, AMC argues that it
had no duty to inform Plaintiff of less expensive loan programs.
[Id. at 21 (citations omitted).]

     Finally, AMC argues that Plaintiff's UDAP claim fails
because AMC did not engage in any harassing collection tactics.
Although Plaintiff alleges that she "has been harassed with
constant collection calls and mailings," [First Amended Complaint
at ¶ 28,] she also states that the actions were taken on AMC's
behalf, purportedly during the servicing of the 2006 Pepeekeo
loan [id. at ¶ 34].  Plaintiff, however, does not remember any
specifics about the alleged harassment.  She merely states that
there was a large number of phone calls.  [AMC Excerpts of Bass

17

Depo. at 204-05, 207.]   AMC argues that Plaintiff has not presented any facts supporting her allegation that AMC engaged in harassing collection tactics.

    **C.**   **Mortgage Fraud**

Plaintiff alleges that notes and mortgages are void based on the same conduct she alleged in support of her UDAP claim.   [First Amended Complaint at ¶ 32.]   AMC argues that, because Plaintiff's UDAP claim fails, her mortgage fraud claim also fails as a matter of law.

    **D.**   **Rescission**

Counts I, II, and III seek damages and rescission against AMC.   AMC argues that it cannot rescind either loan because it no longer owns the Pepeekeo loan, and the Hilo loan has been satisfied.   Further, in order to maintain a claim for rescission based on a UDAP violation, the borrower must establish ability to tender.   [Id. at 23-24.]

Plaintiff seeks to void the Pepeekeo loan, [First Amended Complaint at ¶¶ 30-32,] but this would result in a windfall because she would still hold title to the property and she would be relieved of her mortgage obligations.   In addition, she received the benefit of the original loan amount, and she has not established that she has the ability to tender the loan amount.   [Mem. in Supp. of AMC Motion at 24.]

18

**E.   <u>Emotional Distress</u>**

AMC argues that, under Hawai`i law, an NIED claim requires injury to property or a person, [<u>id.</u> at 24-25,] and Plaintiff has admitted that there was no physical injury to anyone. [AMC Excerpts of Bass Depo. at 219, 222.] AMC argues that this entitles it to summary judgment. [Mem. in Supp. of AMC Motion at 25.]

As to Plaintiff's IIED claim, Plaintiff relies on AMC's acts discussed *supra*. [First Amended Complaint at ¶ 34.] AMC argues that none of these acts rises to the level of outrageous conduct necessary to support an IIED claim. [Mem. in Supp. of AMC Motion at 26.] Further, Plaintiff has not presented evidence of extreme emotional distress. She testified that she suffered headaches and panic attacks, but these did not prevent her from working, and she never sought medical attention. Plaintiff also testified that she was depressed, but could not identify which of AMC's acts allegedly caused the depression. [AMC Excerpts of Bass Depo. at 219-20, 71, 225-26.] AMC argues that it is entitled to summary judgment because there is no evidence to support the IIED claim. [Mem. in Supp. of AMC Motion at 26.]

**F.   <u>Punitive Damages</u>**

Finally, AMC contends that punitive damages are not an independent cause of action. Further, Plaintiff has not established any conduct by AMC that would warrant punitive

19

damages as a remedy for any of her substantive claims and, insofar as all of Plaintiff's substantive claims against AMC fail, her punitive damages claim must also fail.  [Id. at 27.]

AMC therefore urges the Court to grant summary judgment in its favor as to all of Plaintiff's claims against it.

## V.  **Plaintiff's Opposition to the AMC Motion**

In her memorandum in opposition, Plaintiff emphasizes that, in the 8/3/10 Summary Judgment Order, Judge Seabright denied summary judgment to AMC on all of the claims at issue in the AMC Motion.  Plaintiff argues that AMC has taken portions of her deposition testimony out of context.  Plaintiff contends that she has set forth sufficient facts to defeat summary judgment according to the standards in the 8/3/10 Summary Judgment Order. [Mem. in Opp. to AMC Motion at 2-3.]

Plaintiff argues that the 2006 assignment of the Pepeekeo Mortgage to Deutsche Bank was fraudulent.[3]  As to AMC's claim that she lied about faxing the cancellation form to AMC on April 4, 2006, Plaintiff points out that she testified in her deposition that AMC confirmed receipt of her transmission by

_____

[3] Paragraph 12 of Plaintiff's concise statement of facts in opposition to the AMC CSOF ("Plaintiff's AMC CSOF"), [filed 11/10/11 (dkt. no. 96),] cites paragraphs 9 through 13 of her declaration that is attached to Plaintiff's Deutsche Bank CSOF ("Bass Deutsche Bank Declaration") and Exhibits D through G thereto.  [Dkt. nos. 95-1, 95-6 through 95-12.]  The Bass Deutsche Bank Declaration is also attached to Plaintiff's AMC CSOF as Exhibit 3.

return facsimile.  She also emphasizes that Hawaiian Telcom had well-publicized problems with the accuracy of its billing statements in 2006.[4]  Although she cannot testify which signatures on the closing documents are not hers, her testimony that she walked out of the closing before signing all of the documents conclusively establishes that she could not have signed all of the documents.[5]  [Id. at 3-4.]

Plaintiff contends that her testimony that she was promised a fixed rate and presented with an adjustable rate at closing and that she received many harassing collection calls is sufficient to support her claims.  Plaintiff also emphasizes that she testified she would be able to tender any amounts required by taking out a loan.  Further, she testified at her deposition that

---

[4] Plaintiff's AMC CSOF ¶ 14 cites paragraphs 19 and 20 of her declaration that is attached to Plaintiff's AMC CSOF as Exhibit 1 ("Bass AMC Declaration").  [Dkt. no. 96-1.]  She also cites a second declaration attached as Exhibit 2 ("Second Bass AMC Declaration"), which authenticates the attached Exhibits E and L.  [Dkt. no. 96-4.]  Exhibit L is a letter dated August 16, 2006 from Plaintiff's attorney, Peter Kubota, Esq., to Oscar Burga, Office of the President, AMC Mortgage Services.  One of the attachments to that letter is Plaintiff's cancellation form, which AMC purportedly faxed back to her on April 4, 2006.  See also Second Bass AMC Decl. at ¶ 7.  An enlarged version of the return facsimile is attached to Plaintiff's AMC CSOF as Exhibit 4.  [Dkt. no. 96-6.]  Exhibit 5 is a Honolulu Advertiser article dated July 2, 2007 about billing problems and other difficulties that Hawaiian Telcom experienced in 2006.  [Dkt. no. 96-7.]

[5] Exhibit 6 to Plaintiff's AMC CSOF is apparently excerpts of Plaintiff's deposition transcripts.  The Court, however, has not considered the excepts because there is no cover page and no certification page.  Thus, the transcript excerpts are not properly authenticated.

her headaches are severe and that her depression is extreme. [Id. at 4-5.]

Plaintiff therefore urges the Court to deny the AMC Motion.

## VI. **AMC's Reply**

In its reply, AMC points out that Plaintiff's opposition relies solely on her uncorroborated, self-serving testimony and does not cite a single legal authority. As to Plaintiff's allegation that the assignment was fraudulent, AMC responses with the same arguments that Deutsche Bank raised. [AMC Reply at 2-3.] As to Plaintiff's breach of contract claim, AMC argues that the newspaper article Plaintiff submitted as evidence of Hawaiian Telcom's billing problems in 2006 is inadmissible hearsay that cannot be considered in a motion for summary judgment. [Id. at 3-4.] Further, the article is not admissible as a public record or report exception to the hearsay rule because periodicals are not records of public offices or agencies. [Id. at 4 n.2.] AMC therefore argues that this Court cannot consider Plaintiff's Exhibit 5. Even if the Court does consider Exhibit 5, it does not satisfy Plaintiff's burden to come forward with specific facts showing that there are material issues of fact for trial. Plaintiff has not alleged that she herself experienced billing problems during that time period. [Id. at 5-6.]

As to the purported "return fax", AMC contends that it
"is no more than a form Cancellation Notice; it is not a
statement by AMC that it received any Cancellation Notices from
Plaintiff." [Id. at 6.]  AMC also contends that any facsimile it
allegedly sent to Plaintiff is not proof that Plaintiff
transmitted the Cancellation Notices to AMC in the first
instance.  Further, AMC emphasizes that Plaintiff cannot explain
why she accepted more than $25,000.00 in excess proceeds of the
Pepeekeo Loan if she did in fact cancel the loan.  [Id. at 7.]

As to Plaintiff's forgery allegations, AMC reiterates
its arguments from the AMC Motion.  Plaintiff's testimony that
she walked out of the signing at some unspecified point is not
sufficient to meet her burden in opposing summary judgment.  [Id.
at 8-9.]  AMC emphasizes that there is no genuine issue of fact
where the only evidence is uncorroborated and self-serving
testimony.  [Id. at 10.]

Similarly, Plaintiff's bait-and-switch allegations are
not supported as discussed in the AMC Motion.  Even if some
representations were made prior to consummation that Plaintiff
would receive a fixed-rate loan and she was presented with an
adjustable rate at closing, Plaintiff cannot prove that she
suffered damages as a result of the alleged misrepresentations.
[Id. at 10-12.]

As to the claims seeking rescission, Plaintiff did not

23

counter AMC's argument that rescission from AMC is not possible. Further, although she states that she could tender by taking out another loan, Plaintiff has not stated where she would qualify for such a loan and what collateral she would use.  AMC therefore asserts that Plaintiff has failed to establish her ability to tender.  [Id. at 12-13.]

As to Plaintiff's emotional distress claims, AMC also reiterates its arguments from the AMC Motion.  Plaintiff only relies on her own uncorroborated and self-serving testimony. [Id. at 13-14.]

AMC therefore urges the Court to grant the AMC Motion.

## DISCUSSION

**I.   Deutsche Bank Motion**

Plaintiff alleges Count I (breach of contract), Count II (UDAP), and Count III (mortgage fraud) against Deutsche Bank. Plaintiff seeks rescission from Deutsche Bank in each claim, and she also seeks damages from Deutsche Bank in Count II.

Count II alleges the 2006 notes and mortgages are void and unenforceable because "the acts complained of . . . including churning and wrongful nonjudicial foreclosure and bait and switch tactics as to the interest rates and forged loan documents and wrongful harassing collection tactics" constitute UDAPs and violate Haw. Rev. Stat. Chapter 480.  [First Amended Complaint at ¶ 31.]  The churning, bait and switch, and forgery allegations

24

address origination actions, for which Deutsche Bank is not responsible.  See, e.g., Rodenhurst v. Bank of Am., 773 F. Supp. 2d 886, 895-96 (D. Hawai`i 2011) ("Plaintiffs acknowledge that Defendant BofA was not the originating lender.  Defendant BofA, therefore, cannot be liable under Haw. Rev. Stat. § 480-2 for the unfair or deceptive acts and practices that may have occurred during the consummation of the loan." (citation omitted)).  As to the wrongful foreclosure allegation, the First Amended Complaint states that "AMC wrongfully attempted to conduct successive nonjudicial foreclosure auctions on her two Subject Properties in June 2006[.]"  [First Amended Complaint at ¶ 26.]  Moreover, Plaintiff admitted during discovery that her UDAP claim against Deutsche Bank is based upon the actions of other entities; she failed to identify any UDAPs that Deutsche Bank itself committed. [Pltf.'s Interrog. Responses at 8.]

        Insofar as Plaintiff has failed to establish that Deutsche Bank committed any violations of Haw. Rev. Stat. Chapter 480, a required element of a claim under Haw. Rev. Stat. § 480-13, Deutsche Bank is entitled to summary judgment on Count II. See Anderson v. Central Pac. HomeLoans, Inc., Cv. No. 11-00100 DAE-BMK, 2011 WL 3439939, at *5 (D. Hawai`i Aug. 8, 2011) (citing Tokuhisa v. Cutter Mgmt. Co., 223 P.3d 246, 261 (Haw. App. 2009) ("Thus, § 480-13 establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or

property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." (citations omitted))).

Similarly, Plaintiff admitted in discovery that she did not have a contractual relationship with Deutsche Bank, and she failed to identify any breaches of contract that Deutsche Bank committed. [Pltf.'s Interrog. Responses at 3, 5.] As to Count III (mortgage fraud), Plaintiff also failed to identify any misrepresentations that Deutsche Bank made about the subject loans. [Id. at 4.] Plaintiff therefore has failed to establish a prima facie case against Deutsche Bank as to either Count I or Count III.

Plaintiff has argued that Deutsche Bank is a necessary party because Plaintiff cannot obtain rescission without the current mortgagee. Plaintiff's claims in which she seeks rescission, however, arise from alleged conduct by AMC that Deutsche Bank was not involved in. Deutsche Bank's involvement is not necessary to litigate whether AMC breached a contact with Plaintiff, committed UDAPs, or engaged in mortgage fraud, and Deutsche Bank had not alleged any counterclaims or cross-claims in this case. Plaintiff has failed to establish any wrongdoing on the part of Deutsche Bank and, insofar as she has not yet established that she is entitled to rescission, Plaintiff has no

issues to litigate against Deutsche Bank at this time.   If Plaintiff ultimately prevails against AMC and obtains a judgment that she is entitled to rescission, Plaintiff can seek to enforce that judgment against Deutsche Bank thereafter.

The Court therefore GRANTS the Deutsche Bank Motion WITHOUT PREJUDICE to the refiling of Plaintiff's claims against Deutsche Bank should Plaintiff first establish that she is entitled to rescind the loans based on AMC's alleged wrongdoing.

## II.  **AMC Motion**

### A.  **Breach of Contract**

Count I alleges that the notes and mortgages for the Properties "are void and unenforceable . . . as a result of their having been cancelled in accordance with the terms of said accompanying loan agreements[.]" [First Amended Complaint at ¶ 30.]  Thus, Plaintiff alleges that AMC breached the loan agreements because it failed to honor the cancellation notices that she submitted according to the terms of the agreements.

Plaintiff states that she faxed the cancellation notices to AMC on April 4, 2011, and she has provided a confirmation sheet as evidence of that transmission.  [Pltf.'s AMC CSOF, Decl. of Gary Victor Dubin ("Dubin AMC Decl."), Exh. 2 at 2 ¶ 6, 14 (confirmation sheet), 15-17 (cancellation notices).] She also provided a copy of the cancellation notices that AMC included in a subsequent facsimile transmission to her.  [<u>Id.</u> at

27

18.]  She argues that this is evidence that AMC received the documents.

AMC has responded with evidence that, if Plaintiff had sent a facsimile to AMC on April 4, 2006, she would have incurred a long distance charge on her telephone bill, but there was no such charge corresponding to the alleged transmission.  [AMC CSOF, Decl. of Jael Eli Makagon ("Makagon AMC Decl."), Exh. 18 (April Billing Statement), Exh. 19 (Watson Depo.) at 11-19, Exh. 20 (June Billing Statement).]  AMC also submitted a report of a computer forensics specialist who identified a number of ways that Plaintiff's purported confirmation sheet could have been fabricated.  [Makagon AMC Decl., Exh. 21 (Summary Report of Computer Forensics Examination).]

While this Court recognizes that AMC has gone to great lengths to counter Plaintiff's allegations regarding her attempt to cancel the loans, ultimately, the determination of whether AMC failed to honor Plaintiff's properly submitted cancellation notices requires a credibility determination.  This Court cannot determine in a motion for summary judgment which party's evidence is more credible than the other's.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment.").  Thus,

the Court finds that there are genuine issues of material fact
that preclude summary judgment on Plaintiff's breach of contract
claim.  The AMC Motion is therefore DENIED as to Count I.

###   B.    **UDAP and Mortgage Fraud**

As noted previously, Count II, Plaintiff's UDAP claim,
alleges that AMC engaged in churning, wrongful nonjudicial
foreclosure, bait and switch tactics, forgery, harassing
collection tactics.  [First Amended Complaint at ¶ 31.]  Count
III, Plaintiff's mortgage fraud claim, is based on the same
allegations, except for the wrongful collection tactics.  [Id. at
¶ 32.]  The Court will therefore discuss Counts II and III
together.

####    1.    **Churning**

First, as to the "churning" allegations, the 8/3/10
Summary Judgment Order stated "the court understands Plaintiff's
use of 'churning' to refer to Plaintiff's assertion that AMC did
not tell Plaintiff of less expensive options to secure these
mortgages, causing Plaintiff to have more expensive loans while
at the same time generating unnecessary commissions and fees for
AMC." Bass, 2010 WL 3025167, at *9.  Plaintiff, however, has
only presented her declaration stating:

> 15.  As a result of each of said 2006
> refinancings, I wound up with more expensive
> loans, generating unnecessary commissions and fees
> for AMC by excessively churning my loans.
> 16.  I never was told, for instance, of my
> less expensive options to secure second mortgages

instead, so as to avoid large closing costs. [Dubin AMC Decl., Exh. 1 at ¶¶ 15-16.]  Exhibit 1 is a declaration that Plaintiff submitted with her Separate and Concise Counter-Statement of Material Facts in Opposition to the 2010 Summary Judgment Motion.  [Filed 6/24/10 (dkt. no. 28-1).] Although Judge Seabright considered what is now Exhibit 1 in denying the 2010 Summary Judgment Motion as to the portion of Plaintiff's UDAP claim based on churning, the grounds in which AMC sought summary judgment on the UDAP churning claim were limited.  AMC stated "[t]raditionally, allegations of churning have been made against broker-dealers who are in a position to make discretionary decisions concerning the number and type of transactions made on behalf of an investor."  [Mem. in Supp. of 2010 Summary Judgment Motion at 17 (citation and quotation marks omitted).]  AMC argued that, even if such a claim applied to lenders, Plaintiff could not support her churning claim because she refinanced her loans of "her own free will[.]"  [Id. at 18.] In denying summary judgment on Plaintiff's UDAP claim based on churning, Judge Seabright stated in the 8/3/10 Summary Judgment Order that "AMC fails to address how these assertions do not amount to an unfair trade practice in violation of HRS § 480-2." Bass, 2010 WL 3025167, at *9.

In the instant AMC Motion, however, AMC argues that it had no duty to inform Plaintiff of less expensive loan programs.

30

It is well established in this jurisdiction that, generally, "'a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" Stanton v. Bank of Am., N.A., Civil No. 09-00404 LEK-BMK, 2011 WL 6011785, at *18 (D. Hawai`i Nov. 30, 2011) (quoting Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL 1704100, at *13 (D. Hawai`i May 4, 2011) (quoting Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Cal. Ct. App. 1991))); see also, e.g., Kelly v. Bank of Am., 2011 WL 2493048, at *9 (D. Hawai`i June 22, 2011) (quoting Nymark for the same proposition).  Borrowers must "'rely on their own judgment and risk assessment to determine whether or not to accept the loan[.]'"  Kelly, 2011 WL 2493048, at *9 (quoting Renteria v. United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)). There is no evidence in this case which indicates AMC exceeded the traditional role as a lender of money, and therefore AMC had no duty to place Plaintiff in the loan that was most favorable to her.

Further, the portion of Plaintiff's fraud claim based on churning also fails.  Plaintiff has not presented any evidence of false representations by AMC that would support a fraud claim based on churning, such as a representation that the loans she entered into were the least expensive loan products available.

Plaintiff has therefore failed to establish a prima facie case
for the portion of her mortgage fraud claim based on AMC's
alleged churning.  See Miyashiro v. Roehrig, Roehrig, Wilson &
Hara, 122 Hawai`i 461, 482-483, 228 P.3d 341, 362-63 (Ct. App.
2010) (stating elements of a fraudulent or intentional
misrepresentation claim) (citing Hawaii's Thousand Friends v.
Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).

        The AMC Motion is therefore GRANTED as to the portions
of Count II and Count III based on AMC's alleged churning.

## 2.   Harassing Collection Tactics

        Plaintiff also bases her UDAP claim on AMC's alleged
harassing collection tactics.  The AMC Motion seeks summary
judgment on this portion of Plaintiff's UDAP claim because AMC
alleges that Plaintiff has not presented any evidence in support
of this claim.  This Court rejects AMC's arguments for the
reasons set forth in the 8/3/10 Summary Judgment Order, which
sets forth the law of case.[6]  See Bass, 2010 WL 3025167, at *9

_____

        [6] This district court has recognized that:
                The law of the case doctrine is a judicial
                invention designed to aid in the efficient
                operation of court affairs.  United States v.
                Thrasher, 483 F.3d 977, 981 (9th Cir. 2007)
                (citing Herrington v. County of Sonoma, 12 F.3d
                901, 904 (9th Cir. 1993)).  Under the doctrine, a
                court is "generally precluded from reconsidering
                an issue previously decided by the same court[.]"
                United States v. Lummi Indian Tribe, 235 F.3d 443,
                452 (9th Cir. 2000).  For the doctrine to apply,
                the issue in question must have been "decided
                                                (continued...)

32

("Plaintiff asserts that even though she notified AMC of her cancellation of the 2006 loans, AMC continued its foreclosure proceedings and attempts to collect on the loans.  Under these circumstances, it is a question of fact whether this conduct is an unfair and deceptive trade practice.").  The AMC Motion is therefore DENIED as to the portion of Count II, Plaintiff's UDAP claim based on AMC's alleged harassing collection tactics.

### 3.   **Bait and Switch Tactics**

AMC seeks summary judgment on both Plaintiff's UDAP claim and mortgage fraud claim, to the extent that they are based on AMC's alleged "bait and switch tactics as to the interest rates[.]"  [First Amended Complaint at ¶¶ 31 & 32.]  AMC also

---

[6](...continued)
        explicitly or by necessary implication in the
        previous disposition."  Id. (internal quotation
        and citation omitted).  **Application of the
        doctrine is discretionary** and a trial judge's
        decision to apply the doctrine is thus reviewed
        for an abuse of discretion.  Id.
        A court abuses its discretion in applying the
        law of the case if: "(1) the first decision was
        clearly erroneous; (2) an intervening change in
        the law occurred; (3) the evidence on remand was
        substantially different; (4) other changed
        circumstances exist; or (5) a manifest injustice
        would otherwise result."  Ingle v. Circuit City,
        408 F.3d 592, 594 (9th Cir. 2005).  "Law of the
        case should not be applied woodenly in a way
        inconsistent with substantial justice."  United
        States v. Miller, 822 F.2d 828, 832-33 (9th Cir.
        1987) (citing Moore v. Js. H. Matthews & Co., 682
        F.2d 830, 833-34 (9th Cir. 1982)).
Diamond Resort Hawaii Corp. v. Bay West Kailua Bay, LLC, CV. No.
10-00117 DAE-BMK, 2011 WL 2610203, at *4 (D. Hawai`i
July 1, 2011) (alteration in Diamond Resort) (emphasis added).

sought summary judgment on this claim in the 2010 Summary

Judgment Motion.   In the 8/3/10 Summary Judgment Order, Judge

Seabright stated:

> Regarding Plaintiff's assertion of "bait and switch tactics," Plaintiff asserts that AMC misrepresented to Plaintiff that these loans had fixed interest rates.  Pl.'s Decl. ¶ 17.  While AMC argues that it made no misrepresentations because the terms of the loans were outlined in the documents and Plaintiff was not misled because she did not sign a majority of the loan documents, the court nonetheless finds that genuine issues of material fact remain.  Specifically, it is a question of fact whether AMC's alleged oral misrepresentations would mislead a reasonable consumer to seek mortgage loans from AMC and ultimately enter into these transactions-Plaintiff signed some of the loan documents, and Defendants acted as if the loan transaction was completed.  See, e.g., Hawai`i Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 227, 11 P.3d 1, 15 (2000) (finding that borrower raised a genuine issue of material fact that mortagee's conduct was a "bait and switch" where the loan officer represented prior to closing that the borrower would be charged a lower interest rate than what was charged at closing, and told the borrower that it would be "no problem" to lower the rate later).

Bass, 2010 WL 3025167, at *9.

The parties have engaged in further discovery since

Judge Seabright ruled on the 2010 Summary Judgment Motion.  AMC

emphasizes Plaintiff's testimony from her deposition that she

cannot recall what the specific rates were supposed to be, nor

can she remember who informed her of the rates she was supposed

to receive.  Plaintiff stated that she just remembers that the

rates were supposed to be lower.  She also admitted that she has

34

no documentation of the rates that AMC allegedly promised her. [AMC Excerpts of Bass Depo. at 95, 180-81.]   AMC emphasizes that Plaintiff is a sophisticated borrower.   [Id. at 55, 27-28.]   This and other similar evidence, however, address the credibility of Plaintiff's testimony that AMC engaged in bait and switch tactics, and this Court cannot weigh credibility in a motion for summary judgment.   See Anderson v. Liberty Lobby, 477 U.S. at 255.

Similarly, the genuine issues of fact as to whether AMC engaged in bait and switch tactics also preclude summary judgment on the portion of Plaintiff's mortgage fraud claim based on the alleged bait and switch tactics.

The AMC Motion is therefore DENIED as to the portion of Count II, Plaintiff's UDAP claim, and Count III, Plaintiff's mortgage fraud claim, based on AMC's alleged bait and switch tactics.

### 4.   Forgery

The AMC Motion seeks summary judgment on the portion of Plaintiff's UDAP claim and mortgage fraud claim based on Plaintiff's allegation that AMC forged her signature on some of the 2006 loan documents.   Again, this is AMC's second attempt to obtain summary judgment on these claims.   In denying summary judgment on the fraud claim, Judge Seabright stated in the 8/3/10 Summary Judgment Order:

Regarding Plaintiff's assertion that her
signature on the 2006 documents was forged, AMC
argues that it would have been impossible to use
Plaintiff's signature from the 2005 loan documents
to make it appear as if she signed the 2006
mortgages.  AMC's argument misses the
mark-regardless of Plaintiff's speculation
regarding how AMC got Plaintiff's signature on the
2006 loan and/or mortgage documents, the gravamen
of Plaintiff's assertion is that she did not sign
them and that AMC must therefore have placed her
signature on them.  Plaintiff's denial that she
signed the 2006 loan documents and the appearance
of her signature on the 2006 documents is
sufficient to raise a fact issue supporting
Plaintiff's fraud claim.  The court therefore
DENIES AMC's Motion for Summary Judgment on
Plaintiff's fraud claim.

Bass, 2010 WL 3025167, at *8.  For the same reasons, Judge

Seabright also denied the 2010 Summary Judgment as to the portion

of Plaintiff's UDAP claim based on the alleged forgery.  Id. at

*9 n.10.

As with the purported cancellation attempt and the

alleged bait and switch tactics, AMC argues that it is entitled

to summary judgment on Plaintiff's forgery-based claims in light

of the evidence that AMC has obtained since the 8/3/10 Summary

Judgment Order.  AMC emphasizes Plaintiff's deposition testimony

that she cannot remember signing the cancellation notices and

that she did not know whether the signature on each of the loan

documents was hers.  [AMC Excerpts of Bass Depo. at 190-91.]  AMC

also obtained a forensic handwriting report which states that the

signatures on the Pepeekeo Note and Pepeekeo Mortgage and

Plaintiff's exemplars were written by the same individual and the

36

signatures on the Hilo Note and Hilo Mortgage and Plaintiff's

exemplars "were very probably written by the same individual."

[AMC CSOF, Exh. 22 at 4-5.]  Further, AMC obtained deposition

testimony from the Notary Public who notarized the 2006 loan

documents.  Joyce Carlson testified that she has no recollection

or notation in her Notary Book that Plaintiff terminated the loan

signing because she did not want to proceed with the loan.

[Carlson Depo. at 64, 66, 38; AMC CSOF, Exh. 24.]

Again, while this Court recognizes that AMC has gone to

great lengths to counter Plaintiff's forgery allegations, the

ultimate determination of whether AMC forged Plaintiff's

signature on some of the loan documents requires a credibility

determination, and this Court cannot make credibility

determinations on a motion for summary judgment.  See Anderson v.

Liberty Lobby, 477 U.S. at 255.

The AMC Motion is therefore DENIED as to the portion of

Count II, Plaintiff's UDAP claim, and Count III, Plaintiff's

mortgage fraud claim, based on AMC's alleged forgery of her

signature on some of the 2006 loan documents.

## III. Rescission

In addition to arguing that it is entitled to summary

judgment on Counts I, II, and III, AMC contends that, even if

those claims survive summary judgment, Plaintiff's attempt to

obtain rescission as a remedy for those claims fails as a matter

of law.  AMC argues that it cannot rescind loans which it no longer has control over, and Plaintiff has not proven that she has the ability to tender.

As noted in the discussion of the Deutsche Bank Motion, if Plaintiff obtains a judgment that she is entitled to rescission based on AMC's wrongdoing, Plaintiff can seek enforcement of that judgment against Deutsche Bank in a separate action.  Thus, the fact that AMC no longer has control over the loans does require this Court to grant AMC summary judgment on Plaintiff's claims seeking rescission.[7]

As to the issue of tender, Plaintiff does not contest that tender is required to affect rescission.  Plaintiff merely argues that, at this stage of the litigation, her testimony that she could tender the proceeds by obtaining another loan is sufficient.  At the hearing on the Motion, Plaintiff argued that, if she is found to be entitled to rescission, this Court should give her a reasonable amount of time thereafter to tender.

---

[7] The Court notes that AMC has not cited any legal authority for the proposition that rescission is not available because the Hilo Mortgage has been satisfied.  [Mem. in Supp. of AMC Motion at 23 (citing Lonsdale v. Chesterfield, 662 P.2d 385, 388 (Wash. 1983) (stating that once an assignment occurs, "the assignor impliedly guarantees that he will not thereafter interfere with the thing assigned or do anything to defeat or impair the value of the assignment"); Zakarian v. Option One Mortg. Corp., 642 F. Supp. 2d 1206, 1213 (D. Haw. 2009) (noting that an assignor "may no longer assert dominion over the assigned loan")).]  Insofar as it is the moving party's burden to establish that it is entitled to judgment as a matter of law, AMC has not carried its burden on this issue.

The Ninth Circuit has stated, in the context of TILA rescission, that:

> As rescission . . . is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what.  Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds.  If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003); see also Woodworth v. Bank of Am., Nat'l Ass'n, Civil No. 09-3058-CL, 2011 WL 1540358, at *11 (D. Or. Mar. 23, 2011) ("Yamamoto is best read to require that the court to consider whether rescission should be conditioned on tender back by the plaintiff if, after consideration of the evidence presented **at trial or summary judgment**, plaintiff's ability, willingness, or intent to do so is inherently questionable." (emphasis added) (citations omitted)).  The Court finds that these principles are also relevant in the instant case, which concerns rescission as a remedy for state law claims.  This Court has the discretion to determine when Plaintiff must present evidence of her ability to

39

tender and, in making that determination, this Court can consider all of the circumstances of the case, including the nature of the alleged violations and Plaintiff's ability to repay.

In the present case, Plaintiff has raised serious allegations, including forgery, but these allegations are hotly contested.  Plaintiff has represented that she can tender by obtaining another loan.  Under the circumstances of the case, this Court finds that it would not be equitable to require Plaintiff to produce proof of her ability to obtain a loan in order to avoid summary judgment.  It is not clear at this stage whether Plaintiff will ultimately prevail on the claims in which she seeks rescission, and it would not be equitable to rule that Plaintiff should have obtained a loan for the tender amount in order to avoid summary judgment.  The Court notes that, even where the borrowers themselves indicated that they could not tender, the district court has granted additional time to tender the loan proceeds after motions for summary judgment.

> In a February 12, 2001 Order Granting in Part and Denying in Part [Bank's and Appellants'[8]] Cross-Motions for Summary Judgment, Judge King granted summary judgment in Bank's favor as to Appellants' claims for damages under TILA and Hawai`i's unfair and deceptive trade practices act, Hawaii Revised Statutes (HRS) chapter 480, and dismissed such claims.  As to Appellants'

_____

[8] The plaintiffs in the TILA action filed in this district court, <u>Yamamoto, et al. v. Bank of New York</u>, CV 99-00360 SPK-BMK, were the defendants in a state foreclosure action that was on appeal before the Intermediate Court of Appeals of Hawai`i.

40

remaining claim for rescission of the loan for TILA violations, Judge King's order stated, in relevant part:

> TILA's right of rescission is conditioned upon the debtor returning the money.  This is what Judge [Alan C] Kay held in <u>Rowland [v. Novus Financial Corporation</u>, 949 F. Supp. 1447, 1459 (D. Haw. 1996)].  At their depositions, each [Appellant] indicated they could not return the amount financed.  Thus, Defendants argue that rescission is impossible.
>
> . . .
>
> [Appellants] also respond by contending that they should be given time to tender back the loan proceeds (less the finance charges set forth in 15 U.S.C. § 1635(b)). [Appellants] point to a recent order by Chief Judge [David Alan] Ezra in <u>McLaren v. Norwest</u>, Civ. No. 99-00356DAE, wherein Judge Ezra gave [Appellants] 120 days to tender the loan proceeds back to the lender.
>
> Here, however, it is disputed whether [Appellants] can fulfill the necessary tender.  [Appellants] have indicated they cannot, although they ask for time to fulfill the condition.  Given this dispute, as Judge Kay reasoned in Rowland, "at this time the [c]ourt cannot categorically dismiss or grant summary judgment on all [Appellants'] claims for rescission."  949 F. Supp. at 1460.  This is even more so since [Appellants] also ask for time to substitute the Bankruptcy Trustee as the appropriate Plaintiff.  Thus, even assuming that the disclosure regarding the appraisal fee entitles [Appellants] to rescission, the [c]ourt DENIES both [Appellants'] and [Bank's] motions regarding the rescission claim.
>
> [Appellants], however, are given 60 days to substitute the Bankruptcy Trustee as a proper plaintiff in this action.  If they are successful in doing so, then [Appellants] can proceed to attempt to tender the necessary proceeds.  If they do not, and if within that 60-day period Maxine Tampon Yamamoto cannot individually tender the loan proceeds, then

41

> the [c]ourt will dismiss the rescission
> claim.
>            . . .
>            If [Appellants] are unable to comply
> with the conditions stated above within 60
> days of the entry of this Order, then the
> [c]ourt will DISMISS the remaining claims and
> enter judgment in this action.
>
> When Appellants failed to comply with the
> foregoing conditions, Judge King entered an order,
> dated June 15, 2001, dismissing the action and
> ordering the federal district court clerk to enter
> judgment in favor of Bank and against Appellants.

Bank of New York v. Yamamoto, No. 24686, 2003 WL 25920545, at *2

(Hawai`i Ct. App. July 8, 2003) (some alterations in Yamamoto).

To the extent that the AMC Motion seeks a ruling that

all of Plaintiff's requests for rescission fail as a matter of

law, the AMC Motion is DENIED.  The Court, however, will require

Plaintiff to present proof at trial of her ability to tender.

Trial in this matter is scheduled to begin on January 31, 2012,

and this will give Plaintiff a reasonable amount of time after

the filing of this order to obtain proof of her ability to obtain

a loan to tender the proceeds at issue in this case.

**IV.  IIED**

In denying summary judgment as to Plaintiff's IIED

claim, Judge Seabright stated in the 8/3/10 Summary Judgment

Order:

> Hac [v. Univ. of Haw., 102 Hawai`i 92, 73 P.3d 46
> (2003)], . . . established the following elements
> of an IIED claim: "1) that the act allegedly
> causing the harm was intentional or reckless, 2)
> that the act was outrageous, and 3) that the act

42

caused 4) extreme emotional distress to another."
Id. at 106-07, 73 P.3d at 60-61 (adopting approach
set forth in the Restatement (Second) of Torts)
(emphasis added). . . .

Further, to the extent the court construes
AMC's argument as arguing that AMC engaged in no
outrageous conduct, the evidence viewed in a light
most favorable to Plaintiff suggests otherwise.
The Restatement describes what constitutes
"outrageous" conduct:

> It has not been enough that the defendant has
> acted with an intent which is tortious or
> even criminal, or that he has intended to
> inflict emotional distress, or even that his
> conduct has been characterized by "malice,"
> or a degree of aggravation which would
> entitle the plaintiff to punitive damages for
> another tort.  Liability has been found only
> where the conduct has been so outrageous in
> character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to
> be regarded as atrocious, and utterly
> intolerable in a civilized community.
> Generally, the case is one in which the
> recitation of the facts to an average member
> of the community would arouse his resentment
> against the actor, and lead him to exclaim,
> "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d.
(1965).  "The question whether the actions of the
alleged tortfeasor are . . . outrageous is for the
court in the first instance, although where
reasonable persons may differ on that question it
should be left to the jury."  Nagata v. Quest
Diagnostics Inc., 303 F. Supp. 2d 1121, 1127 (D.
Haw. 2004) (citing Shoppe v. Gucci Am., Inc., 94
Hawai`i 368, 387, 14 P.3d 1049, 1068 (2000)).

As described above, Plaintiff asserts that
AMC, among other things, forged her signature on
the 2006 loans, refused to honor Plaintiff's right
of cancellation of the loans when she discovered
the forgeries, and commenced foreclosure
proceedings against Plaintiff when she failed to
make her loan payments.  The court finds that
whether this conduct constitutes outrageous
conduct is a question for the jury.  The court
therefore DENIES AMC's Motion for Summary Judgment
on Plaintiff's IIED claim.

Bass, 2010 WL 3025167, at *10-11.  Similarly, insofar as this

Court has denied summary judgment as to, *inter alia*, Plaintiff's

claim that AMC forged her signature on some of the 2006 loan

documents, this Court also finds that there are genuine issues of

material fact that also preclude summary judgment on Plaintiff's

IIED claim.

    The AMC Motion is therefore DENIED as to the portion of

Count V alleging an IIED claim.

**V.    NIED**

    In denying summary judgment as to Plaintiff's NIED

claim, Judge Seabright stated in the 8/3/10 Summary Judgment

Order:

> A plaintiff may recover for NIED "where a
> reasonable [person], normally constituted, would
> be unable to adequately cope with the mental
> stress engendered by the circumstances of the
> case."  Doe Parents No. 1 v. Dep't of Educ., 100
> Hawai`i 34, 69, 58 P.3d 545, 580 (2002) (citation
> and internal quotation marks omitted).  To
> maintain an NIED claim, a person must generally
> allege "that *someone* was physically injured by the
> defendant's conduct, be it the plaintiff himself
> or herself or someone else."  Id. at 580-81; see
> also Kaho`ohanohano v. Dep't of Human Serv., 117
> Hawai`i 262, 306-07, 178 P.3d 538, 582-83 (2008).
>     Viewing the evidence presented in a light
> most favorable to Plaintiff, the court finds that
> genuine issues of material fact exist whether
> Plaintiff suffered physical injury sufficient to
> support her NIED claim.  See Pl.'s Decl. ¶ 24.
> The court therefore DENIES AMC's Motion for
> Summary Judgment as to Plaintiff's NIED claim.

Bass, 2010 WL 3025167, at *10 (alteration in Bass).

    AMC again seeks summary judgment, arguing that

44

Plaintiff's testimony during her deposition precludes her from recovering on her NIED claim. [Mem. in Supp. of AMC Motion at 25 ("Plaintiff herself admits that '[n]obody was ever physically hurt from this.' Bass Depo. at 222:9.").] Plaintiff, however, has submitted the same declaration in opposition to the instant AMC Motion that she submitted with her opposition to the 2010 Summary Judgment Motion. It states that she has suffered headaches, sleep loss, and severe emotional distress as a result of AMC's failure to cancel the loans. Pltf.'s AMC CSOF, Exh. 1 at ¶ 24; Bass, 2010 WL 3025167, at *2 (citing Pl.'s Decl. ¶ 24). Judge Seabright has already ruled that Plaintiff's declaration is sufficient to create a genuine issue of material fact as to whether Plaintiff suffered a sufficient physical injury to support her NIED claim. This ruling is the law of the case, and there is no reason that this Court should refuse to apply it.

AMC apparently contends that the cited statement from Plaintiff's deposition justifies a different ruling than Judge Seabright made in the 8/3/10 Summary Judgment Order. In context, however, the statement was not an admission that she lacked an injury sufficient to support an NIED claim. Plaintiff's statement occurred during the following exchange:

> [T]hey knew I was going through it. And, of course, as all children that love their mothers, they were empathetic to it.
> But as a mother – I tried to keep them safe. They had concerns of their own. They were expecting children themselves.

45

Q.    So, as far as you know, they didn't suffer any bodily injury or physical harm?
A.    Nobody was ever physically hurt from this.
Q.    Did they -
A.    - and did not shoot us.

[AMC Excerpts of Bass Depo. at 222:1-11.[9]]  Nothing in the provided excerpts of Plaintiff's deposition, or elsewhere in the current record, indicates that Plaintiff has recanted her declaration stating that she suffered headaches, sleep loss, and severe emotional distress.  Even if the Court construes Plaintiff's deposition testimony as inconsistent with her declaration, the inconsistency goes to Plaintiff's credibility.  As previously stated, this Court cannot weigh credibility in a motion for summary judgment.  See Anderson v. Liberty Lobby, 477 U.S. at 255.

The AMC Motion is therefore DENIED as to the portion of Count V alleging an NIED claim.

## VI.  Punitive Damages

The AMC Motion seeks summary judgment on Count IV, Plaintiff's incidental claim for punitive damages.  AMC argues that there is no outrageous conduct that would support an award of punitive damages, and AMC contends that the punitive damages claims because AMC is entitled to summary judgment on all of Plaintiff's claims.  In the 8/3/10 Summary Judgment Order, Judge

_____

[9] The Court notes that AMC did not include the preceding page in the AMC Excerpts of Bass Deposition.

Seabright denied summary judgment on Plaintiff's punitive damages because Plaintiff's IIED claim survived summary judgment.  <u>Bass</u>, 2010 WL 3025167, at *11 (citing <u>Kang v. Harrington</u>, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action."); <u>see also</u> <u>Lee v. Aiu</u>, 85 Hawai`i 19, 34, 936 P.2d 655, 670 (1997) (holding record contained substantial evidence that defendants engaged in "aggravated or outrageous misconduct" required to impose punitive damages where IIED claim also stood)).  Thus, pursuant to the law of the case doctrine, because this Court has denied the AMC Motion as to Plaintiff's IIED claim, this Court also DENIES the AMC Motion as to Count IV, Plaintiff's claim for punitive damages.

<b><u>CONCLUSION</u></b>

On the basis of the foregoing, Deutsche Bank's Motion for Summary Judgment, filed August 31, 2011, is HEREBY GRANTED, and AMC's Motion for Summary Judgment, also filed August 31, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART.

The Deutsche Bank Motion is GRANTED insofar as Plaintiff's rescission claims against Deutsche Bank are DISMISSED WITHOUT PREJUDICE to the filing of a new action against Deutsche Bank should Plaintiff first establish that she is entitled to rescind the loans based on AMC's alleged wrongdoing.  The Court GRANTS Deutsche Bank summary judgment as to Plaintiff's claim for

47

damages against Deutsche Bank in Count II.

The AMC Motion is GRANTED as to the portions of Count II and Count III based on AMC's alleged churning.  The AMC Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 27, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**LAURIE ANN BASS V. AMERIQUEST MORTGAGE COMPANY, ET AL.; CIVIL NO. 09-00476 LEK-BMK; ORDER GRANTING DEFENDANT DEUTSCHE BANK'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT AMC'S MOTION FOR SUMMARY JUDGMENT**